0949

Michael W. BUTTS, Appellant v. AVX CORPORATION, Respondent.
(355 S. E. (2d) 876)

Court of Appeals

*Larry L. Hanna* and *Randall K. Mullins*, Myrtle Beach, *for appellant.*

*Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards*, Greenville, *for respondent.*

Heard March 24, 1987.

Decided April 27, 1987.

GOOLSBY, Judge:

Michael W. Butts brought suit against AVX Corporation alleging causes of action for wrongful discharge, breach of

contract, intentional infliction of emotional distress, fraud and deceit, and unjust enrichment. Butts' causes of action allegedly relate to his termination from AVX. The trial court granted AVX's motion for summary judgment on the ground that each of Butts' causes of action was rooted in a collective bargaining agreement and that, because Butts failed to exhaust his remedies under the agreement, each of his causes of action was subject to dismissal. Butts appeals. We affirm.

The basic issue is whether the trial court properly granted AVX summary judgment on each of Butts' causes of action.

Rule 56(c) of the South Carolina Rules of Civil Procedure states that summary judgment must be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Spencer v. Miller*, 259 S. C. 453, 192 S. E. (2d) 863 (1972); *Gilmore v. Ivey*, 290 S. C. 53, 348 S. E. (2d) 180 (Ct. App. 1986). In addition, it must be shown that further inquiry into the facts is not needed to clarify the application of law. *Folkens v. Hunt*, 290 S. C. 194, 348 S. E. (2d) 839 (Ct. App. 1986). On a motion for summary judgment, the court must construe all ambiguities, conclusions, and inferences arising in and from the evidence most strongly against the moving party. *Tom Jenkins Realty, Inc. v. Hilton*, 278 S. C. 624, 300 S. E. (2d) 594 (1983).

AVX employed Butts as a tool and die maker from November 1977 until September 1982. A collective bargaining agreement between AVX and Local Union No. 382 of the International Brotherhood of Electrical Workers covered employees of AVX.

Butts underwent surgery for the removal of nodules from his vocal chords and, as a consequence, missed one day of work. His physician supplied him with a medical excuse and wrote upon it, "no vocalization."

Butts returned to work on September 14, 1982, and offered the excuse to AVX's nurse for her to validate it. The nurse refused to accept the excuse, claiming Butts had exhausted his medical excuses for the year. Butts denied that he had done so and reported the matter to his supervisor.

In discussing the dispute with his supervisor, Butts wrote him notes in which he sought the supervisor's assistance and defended his position. The supervisor left Butts in the shop and went to talk with the nurse.

The supervisor thereafter returned to the shop and reported to Butts the nurse's refusal to change her position regarding the number of medical excuses Butts had taken for the year. Because he experienced difficulty in getting his "point across" to his supervisor, Butts attempted to explain his position vocally.

The two then went to another supervisor's office where they discussed the nurse's refusal to accept Butts' medical excuse. Butts expressed particular concern about being penalized for his absence from work.

After stating that he could not work under the stress of the situation, Butts left the supervisor's office and turned in his tools. He also punched his time card and took the card to his supervisor. The latter initialed Butts' time card and Butts walked out. As he was leaving, Butts told his supervisor that his conversations with him and the other supervisor had irritated his throat.

A friend telephoned Butts at home and informed him that his supervisor had listed Butts as a "quit." Butts immediately called and asked for his supervisor. On learning he had gone for the day, Butts spoke with the other supervisor familiar with his problem. The other supervisor suggested that Butts not "worry about it" and assured him that "everything's all right."

When Butts returned to work the next morning, his supervisor told him that he no longer had a job. Later that morning, Butts met with management and union representatives and explained to them all that had happened. One of the management representatives advised Butts to go home and await a decision on his job status.

That afternoon Butts received a telephone call from a management representative who told Butts that he was being "put down officially as a 'quit.'"

The following day Butts met briefly with the management representative who had telephoned him and with a union representative. The management representative advised Butts that he stood by his earlier decision.

As Butts left the meeting, Butts informed the union representative that he wished to file a grievance. The union representative told Butts that "it won't do any good...."

The collective bargaining agreement, with which Butts was familiar, prescribed a grievance procedure that an ag-

grieved employee was required to follow whenever the employee had a dispute with management that arose under and during the term of the agreement. The first step called for an attempt by the employee and his supervisor or foreman "to adjust the matter." If they failed in their effort "to reach a satisfactory adjustment," the employee was required to submit within a prescribed time to his Department Manager a written grievance signed by both the employee and the Chief Steward, a union representative.

Although he attempted to adjust the matter with his superiors, Butts never filed a written grievance with his Department Manager. The agreement expressly provided that an aggrieved employee's failure to file a grievance in a proper manner and within the prescribed time limit constituted a waiver and abandonment of the grievance and precluded the grievance from "thereafter form[ing] the basis of any further grievance between the parties."

After waiting over two years, Butts brought the instant action. Butts' cause of action for wrongful discharge alleges that AVX willfully attempted to circumvent its written policies in discharging him; his cause of action for breach of contract expressly refers to alleged seniority rights; his cause of action for intentional infliction of emotional distress alleges that AVX's agents, knowing of his inability to talk, willfully engaged him in a verbal argument over the issue of his absence from work for medical reasons; his causes of action for fraud and deceit alleged that AVX knowingly misrepresented that he, as an AVX employee, would have certain rights and benefits regarding "seniority, termination, leave, and absences;" and his cause of action for unjust enrichment alleges that AVX, "in direct contradiction of its expressed policies," benefited by discharging him and employing another person to perform his job function at a lesser salary.

Butts' principal contention is that the trial court committed reversible error in holding that his causes of action should be dismissed because of his failure to bring them under Section 301 of the Labor Management Relations Act. *See* 29 U. S. C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court ... hav-

ing jurisdiction of the parties. . . .". He argues that his causes of action, which are based on state law, are not so related to the collective bargaining agreement that they must be resolved by reference to federal law.

Section 301 requires the federal courts to fashion a ■ body of federal common law for use in addressing disputes arising out of labor contracts. *Textile Workers v. Lincoln Mills*, 353 U. S. 448, 77 S. Ct. 912, 1 L. Ed. (2d) 972 (1957). An action brought in a state court alleging a violation of a labor agreement, therefore, must be brought under Section 301 and it must be resolved by reference to federal law. *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 105 S. Ct. 1904, 85 L. Ed. (2d) 206 (1985); *Teamsters v. Lucas Flour Co.*, 369 U. S. 95, 82 S. Ct. 571, 7 L. Ed. (2d) 593 (1962). Indeed, the pre-emptive effect of Section 301 goes beyond actions alleging contract violations. *Allis-Chalmers Corp. v. Lueck, supra.* Questions that relate to what the parties to a labor agreement intended and what legal consequences were intended to flow from breaches of the agreement must also be resolved by reference to federal law, irrespective of whether such questions arise in the context of an action alleging a breach of contract or in an action alleging liability in tort. *Id.*

Section 301, however, does not preempt "state rules ■ that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* 471 U. S. at 212, 105 S. Ct. at 912, 85 L. Ed. (2d) at 216. Thus, state-law rights and obligations that exist independently of private agreements and that, as a result, cannot be either waived or altered by agreement of the parties are not pre-empted by labor agreements. *Id.*

The question of whether federal labor-contract law ■■ pre-empts a claim based on state law is a question that must be determined on a case-by-case basis. *Id.* A state-law claim must be treated as one arising under Section 301 or dismissed as pre-empted by federal labor-contract law when resolution of the claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract. *Id.*

We hold that, with the exception of his cause of action ■ alleging intentional infliction of emotional distress, Butts' causes of action were pre-empted by federal

labor-contract law. The record before the trial court, which consisted only of the pleadings, Butts' testimony at deposition, and the collective bargaining agreement, clearly shows that the causes of action for wrongful discharge, breach of contract, fraud and deceit, and unjust enrichment arose out of AVX's alleged breach of the collective bargaining agreement and that these causes of action would depend for their resolution substantially upon an interpretation of the agreement.

At his deposition, Butts pointed to the union contract as the source of the written policies that AVX allegedly attempted to circumvent in discharging him, as the source of the seniority rights that AVX allegedly breached in terminating his employment contract, and as the source of the rights and benefits regarding seniority, termination, leave, and absences that AVX allegedly misrepresented he, after a time, would have as an AVX employee. In addition, Butts testified that "[t]he essence of this lawsuit is I feel I was wronged by AVX by their [sic] violation of the rules that they [sic] were supposed to follow." He expressly admitted that the rules to which he referred were contained "[i]n the union agreement...."

Regarding Butts' cause of action for intentional infliction of emotional distress, we do not view this cause of action as substantially dependent for its resolution upon the terms of the labor contract in issue. The conduct complained of has, at most, only a tangential connection with the contract.

The South Carolina Supreme Court first recognized the tort of intentional infliction of emotional distress, or outrage, in *Ford v. Hutson*, 276 S. C. 157, 276 S. E. (2d) 776 (1981). One element that a plaintiff must establish to be entitled to a recovery on the basis of this tort is that "the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency'" and that the conduct is "regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 162, 276 S. E. (2d) at 778. The question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance. *Todd v. South Carolina Farm Bureau Mutual Insurance Co.*,

283 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984), *quashed in part on other grounds*, 287 S. C. 190, 336 S. E. (2d) 472 (1985). Not all conduct involving personal interaction and causing emotional distress in a business setting, this court has held, may serve as a basis for an action alleging intentional infliction of emotional distress. *Save Charleston Foundation v. Murray*, 286 S. C. 170, 333 S. E. (2d) 60 (Ct. App. 1985), *cert. denied*, Davis' Advance Sheets, No. 3 at 1 (Ct. App. January 18, 1986).

When asked at his deposition to explain what conduct on the part of AVX's officials constituted the "outrageous or abhorrent conduct" about which he complained, Butts referred to management's "continual denial" of his medical excuse and to his having "felt" the need to vocalize his position regarding his absence from work to management representatives who, he says, knew he was under medical orders not to talk.

Viewing this evidence and all its inferences in the light most favorable to Butts, we hold that this conduct, as a matter of law, was not "so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and [was not] 'atrocious and utterly intolerable in a civilized community.' " *Ford v. Hutson*, 276 S. C. at 162, 276 S. E. (2d) at 778. Although Butts felt a need to vocalize his position in attempting to resolve his dispute with the company, there is nothing in the record to suggest that the management representatives with whom Butts met forced him to explain his position vocally.

Moreover, the conduct of AVX officials toward Butts did not involve excessive self-help in either asserting a legal right or avoiding a legal obligation that arose out of their pre-existing legal relationship, a factor often present where liability for outrage has been found. *Folkens v. Hunt, supra.* Requiring Butts to speak when he was unable to do so would not have helped AVX at all since a failure of the parties to adjust the matter would not necessarily have ended the dispute. Under the collective bargaining agreement, as we mentioned, Butts could continue the grievance process by submitting to the Department Manager a written grievance signed by Butts and the Chief Steward.

The trial court, then, also properly granted AVX summary

judgment on the cause of action alleging intentional infliction of emotional distress.

Butts additionally maintains that the circuit court committed error in granting summary judgment because genuine issues of material fact exist regarding whether the union adequately represented him in his dispute with AVX.

The question of whether the union adequately represented Butts in connection with his employee grievance is manifestly without merit. The record is clear that Butts himself failed to utilize the grievance procedure prescribed by the collective bargaining agreement when he neglected to reduce his grievance to writing and to sign it.

Affirmed.

SANDERS, C. J., and CURETON, J., concur.